UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

WILLIAM PHILLIPS,                        )
                                         )
          Plaintiff,                     )
                                         )
VS.                                      )          No. 20-1129-JDT-cgc
                                         )
COUNSELOR HARRIS, ET AL.,                )
                                         )
          Defendants.                    )

_____

ORDER DISMISSING COMPLAINT AND GRANTING LEAVE TO AMEND

_____

On April 24, 2020, Plaintiff William Phillips filed a *pro se* civil complaint and a motion to proceed *in forma pauperis* in the U.S. District Court for the Middle District of Tennessee. (ECF Nos. 1 & 2.) At the time, Phillips was incarcerated at the South Central Correctional Facility (SCCF) in Clifton, Tennessee. (ECF No. 1 at PageID 2.)[1] On June 11, 2020, U.S. Chief District Judge Waverly D. Crenshaw, Jr. granted Phillips pauper status, assessed the civil filing fee pursuant to the Prison Litigation Reform Act, 28 U.S.C. §§ 1915(a)-(b). (ECF No. 7.) Judge Crenshaw also transferred the case to this district because Phillips's claims arise from events that occurred during his previous incarceration at the Whiteville Correctional Facility (WCF) in Whiteville, Tennessee. (*Id.* at PageID 6.)

Phillips's complaint asserts claims for failure to protect, inadequate medical care, unconstitutional conditions of confinement, verbal harassment, discrimination, and an inadequate

_____

[1] According to information on the Tennessee Department of Correction website, Phillips is no longer confined. *See* www.apps.tn.gov/foil-app/search.jsp. He has not submitted a change of address to either this Court or the Middle District.

grievance procedure.  (ECF No. 1 at PageID 4-5, 22-24.)  He sues the following Defendants: Counselor First Name Unknown (FNU) Harris; Correctional Officer (C/O) FNU Rivers; Disciplinary Board Chairperson FNU Powell; Grievance Chairperson Sergeant D. Jones; Unit Manager FNU Bonner; Case Manager FNU Fuller; C/O FNU Robinson; Internal Affairs (I.A.) Officer FNU Howell; Captain FNU Trotter; C/O FNU Woods; Nurse FNU Davis; and CoreCivic.[2] (*Id*. at PageID 1-3, 23.)[3]

Phillips alleges that on January 30, 2020, maintenance cut off the water in his cell because of repairs being made in the cell next door.  (ECF No. 1 at PageID 4.)  He informed C/O Rivers about the problem, who said she would call maintenance.  (*Id.* at PageID 4-5, 22.)  The next day, as Counselor Harris passed out trays at breakfast and again at lunch, Phillips informed her the water in the cell was still off.  (*Id.* at PageID 21, 22.)  During lunch, apparently annoyed by Phillips's repeated complaints about the lack of water in his cell, Harris allegedly became aggressive and unprofessional; she cursed him and pulled out her mace but did not spray him.  (*Id.* at PageID 22.)  Case Manager Fuller then talked to Phillips and told him to calm down, and called maintenance.  (*Id.* at PageID 21-22.)  As Phillips got up to walk back to his cell, however, Harris allegedly "got even more upset and stormed at [him]" (*id.* at PageID 22), "charging at [him] in an

---

[2] CoreCivic is a private company that manages the WCF.  *See* www.tn.gov/correction/sp/ state-prison-list/whiteville-correctional-facility.html ("Whiteville Correctional Facility . . . is managed by CoreCivic, a private corrections management firm.").  Because a prison or jail is not an entity subject to suit, *see Marbry v. Corr. Med. Serv.*, No. 99-6706, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000), any claims directed at the WCF are really claims against CoreCivic.

[3] Phillips also attempts to sue an unidentified "Assistant Warden of Safety" and the "Chief of Security."  (ECF No. 1 at PageID 1, 4, 5, 23.)  However, service of process cannot be made on such unidentified parties, and the filing of a complaint against unknown defendants does not toll the running of the statute of limitation.  *See Wiggins v. Kimberly-Clark Corp.*, 641 F. App'x 545, 548-49 (6th Cir. 2016) ("The Sixth Circuit treats naming a specific individual in place of a John Doe as joinder of a new party." (*citing Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996))).

aggressive manner" (*id.* at PageID 5) and calling him names and threatening to get him beat up. (*Id.* at PageID 21-22.)  Phillips alleges Case Manager Fuller had to grab Harris to keep her from assaulting him.  (*Id.* at PageID 22.)

Phillips further alleges he was assaulted by another inmate on February 4, 2020,[4] "wh[ile] C/O Robinson watch[ed]."  The assailant hit Phillips with a broom stick and "stuck" him three times with a knife, twice in the chest and once in the arm.  (*Id.* at PageID 5, 24.)  Phillips states the next day, February 5, 2020, he talked to a Tennessee Department of Correction official about the incident (*id.*), but he does not describe that conversation except to say he was "violated every Rule."  (*Id.* at PageID 5.)  He alleges he was "violated in every safety way[,] and favor[i]tism was shown[,] and [discrimination]."  (*Id.* at PageID 4.)

On either February 5 or 6, 2020, Phillips allegedly reported the assault to the Chief of Security and the Warden of Safety.  (*Id.* at PageID 5, 23.)  The Security Chief called Disciplinary Board Chairman Powell, and Phillips was taken to a cell in the intake area of the prison where Captain Trotter, I.A. Officer Howell, Grievance Chairperson Jones, and C/O Woods also were present.  (*Id.* at PageID 23.)  Woods obtained a camera to take photos of his wounds, and Nurse Davis arrived with a "body sheet"[5] and asked Phillips questions about the assault.  (*Id.* at PageID 5, 23.)  All but Jones and Nurse Davis left the area; Jones then "made Ms. Davis make me do the medical [incident] report which the medical employee is responsible for."  (*Id.* at PageID 5; *see id.* at PageID 23.)  Phillips alleges he was never taken to medical for any treatment; instead, he

---

[4] The complaint is not entirely clear about the date of the assault, but the Court surmises it occurred on February 4.  (*See* ECF No. 1 at PageID 24; *see also id.* at PageID 5.)

[5] Phillips does not explain what a "body sheet" is, but it may refer to the medical form which has a drawing of the human body and on which the location and extent of a person's injuries and other medical issues can be listed.

was sent "straight to the hole."  (*Id.* at PageID 5.)  He asserts he was discriminated "by color because Capt[ai]n Trotter is Caucasian and he is the controlling officer [throughout] the prison." (*Id.* at PageID 23.)  He contends a white inmate in the cell with him was assaulted the same day and was taken to medical.  (*Id.* at PageID 6.)

Though Phillips grieved both the July 31 and the February 4 incidents, he asserts the grievances were not properly handled and that his grievance concerning the February 4 assault was "mysteriously lost."  (*Id.* at PageID 5-8.)

Phillips seeks $500,000 for "uncruelty punishment"; $500,000 "for my safety being violated"; and $500,000 "for being mentally disturb[ed]" by rights deprivations.  (*Id.* at PageID 5.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint —

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the Court applies the standards of Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007).  *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).  The Court accepts a plaintiff's "well-pleaded" factual allegations as true and then determines whether the allegations "'plausibly suggest an entitlement to relief.'"  *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681).  Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679.

4

Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Phillips filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

*Claims Against CoreCivic and Official Capacity Claims*:  Phillips does not state a claim against CoreCivic or against the WCF Defendants in their official capacities.[6]  "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983."  *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)).  The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or that provide medical care or food services to prisoners.  *Id.* at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001); *see also Eads v. State of Tenn.*, No. 1:18-cv-00042, 2018 WL 4283030, at *9 (M.D. Tenn. Sept. 7, 2018).  CoreCivic "cannot be held liable under a theory of respondeat superior."  *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011).  To prevail on a § 1983 claim against CoreCivic, Phillips "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights.  *Id.*  Phillips does not allege the Defendants deprived him of constitutional rights based on an unconstitutional policy or custom of CoreCivic.

*Claims Against Defendants Rivers & Bonner*:  Phillips does not allege any wrongdoing by Defendant Rivers.  His only allegation against her is that when he buzzed into the master control room to report the water in his cell was off, Rivers told him she would call maintenance.  (ECF No. 1 at PageID 4, 22.)  The complaint contains no allegations whatsoever against Defendant Bonner.  When a complaint fails to allege any action by a Defendant, it necessarily fails to "state a claim for relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

---

[6] The claims against the WCF Defendants in their official capacities are treated as claims against their employer, CoreCivic.

It does not appear Phillips is contending that either Rivers or Bonner was acting as a supervisor at the WCF.  Even if that is the case, however, he cannot sue these individuals based only on their supervisory positions.  Under § 1983, government officials may not be held liable under a theory of *respondeat superior*.  *Ashcroft v. Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  A supervisory official, who is aware of the unconstitutional conduct of his subordinates but fails to act, generally cannot be held liable in his individual capacity.  *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996).

Furthermore, a failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for § 1983 liability.  *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation.").  Because Phillips fails to plead that Rivers and Bonner took, or failed to take, any action that violated his rights, he does not state a claim against them in their individual capacities.

<u>Claims for Failure to Protect</u>:  The Eighth Amendment protects prisoners from "cruel and unusual punishment," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), including the right to be free "from violence at the hands of other prisoners."  *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (quoting *Farmer*, 511 U.S. at 833); *see also Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998) (explaining that the Eighth Amendment imposes on prison officials "an affirmative duty to protect inmates from violence perpetrated by other prisoners").  Accordingly, the Constitution

7

requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

A failure-to-protect claim has objective and subjective components. For the objective prong, a plaintiff must demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm." *Bishop*, 636 F.3d at 766 (quoting *Farmer*, 511 U.S. at 833). For the subjective prong, a plaintiff must allege that a prison official "acted with 'deliberate indifference' to inmate health or safety," *id*. (quoting *Farmer*, 511 U.S. at 834), meaning the official "kn[ew] of and disregard[ed]" the excessive risk of harm. *Id*. at 766-67 (quoting *Farmer*, 511 U.S. at 837); *see also Richko v. Wayne Cnty.*, 819 F.3d 907, 915 (6th Cir. 2016) (citing *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014)). It is not enough that the official "should have perceived" a significant risk, "but did not." *Farmer*, 511 U.S. at 838. An official's state of mind must be "more blameworthy than negligence" before liability will attach. *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997) (quoting *Farmer*, 511 U.S. at 835). In analyzing the subjective component, courts must consider each defendant's knowledge individually. *See Bishop*, 636 F.3d at 767 (citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 542 (6th Cir. 2008) and *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005)).

Phillips alleges he was attacked by another inmate while Robinson, who was in the master control room, watched. (ECF No. 1 at PageID 4, 24.) He does not, however, allege Robinson knew the attack was going to occur or knew there was a significant risk it would occur. He also does not allege Robinson had enough time, from her station in the master control room, to prevent the assault or intervene to stop it, or to summon other correctional officers to do so. Phillips therefore does not sufficiently allege Robinson subjectively knew of, yet disregarded, an excessive risk to his safety.

Phillips also alleges Counselor Harris charged him aggressively, cursing and taking out her mace as if to spray him. (*Id.* at PageID 5, 22.) Case Manager Fuller, however, immediately grabbed Harris and prevented any assault. (*Id.* at PageID 22.) Thus, Phillips acknowledges he suffered no harm during the confrontation because Harris did not actually spray or otherwise injure him. (*Id.* at PageID 5, 6, 22.) Though in his grievance Phillips contended Harris also threatened to get him beat up and to put him back in a unit "where I was into it with other people" (*id.* at PageID 21), he does not allege she had anything to do with the attack against him a few days later. He also does not allege Robinson had him placed in a unit with incompatible inmates.

Phillips therefore does not sufficiently allege either the objective or the subjective prong of an Eighth Amendment claim for failure to protect him with regard to this incident.

*Eighth Amendment Claims for Denial of Medical Care*:  The Court also reviews claims regarding the denial of medical care under the Eighth Amendment. Under *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'" . . . proscribed by the Eighth Amendment." However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. To state a cognizable claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106.

The objective component of an Eighth Amendment medical care claim requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would readily recognize the necessity for a doctor's

attention.'" *Blackmore*, 390 F.3d at 897; *see also Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). The subjective component again requires that jail officials have a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (plaintiffs must show officials' "deliberate indifference" to a substantial risk of serious harm); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009). Prison officials violate the Eighth Amendment when they subjectively know of an excessive risk of harm to an inmate's health or safety and disregard it. *Farmer*, 511 U.S. at 837.

Phillips alleges the inmate who attacked him struck him with a broom stick multiple times and "stuck" him three times with a knife, yet Phillips was not taken for medical treatment. (ECF No. 1 at PageID 4, 5, 24.) Phillips does not, however, actually allege the injuries he sustained were serious enough to require medical treatment. He also does not allege he requested medical treatment from any named Defendant following the attack and was denied or that any named Defendant knew he was injured seriously enough to require medical attention. In fact, it seems Phillips did nothing more to report the incident until at least the next day. (*Id.* at PageID 5, 6, 24.) When he did report it, his wounds were photographed and documented. (*Id.* at PageID 5, 23.) He does not contend he suffered any additional harm due to the lack of medical treatment.

Because Phillips does not allege any Defendant was deliberately indifferent to a serious medical need, he fails to state an Eighth Amendment claim for denial of medical care.

*Conditions of Confinement Claims*: The allegation that Phillips's did not have water in his cell for twenty-four hours arises under the Eighth Amendment as well. As explained at length *supra*, Phillips must meet both the objective and subjective prongs of the Eighth Amendment in order to state a claim to relief. *See Farmer*, 511 U.S. at 834. The conditions of a prisoner's confinement may be considered cruel and unusual when they deprive him of "the minimal civilized

measure of life's necessities as measured by a contemporary standard of decency." *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see Rhodes*, 452 U.S. at 347; *Estelle*, 429 U.S. at 103-04. A prisoner must allege "extreme deprivations . . . to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992).

Phillips's allegations do not satisfy the Eighth Amendment's two elements. As to the objective prong, he does not allege that he went without drinking fluids, became dehydrated, or suffered other physical impacts from the water shut-off in his cell. In fact, the lieutenant on duty that night gave Phillips and his cellmate "some water out of the pod closet. So we be sipping on water all night." (ECF No. 1 at PageID 22.) His complaint suggests the incident was a one-time occurrence which WCF's maintenance department eventually resolved. (*Id*. at PageID 4.) The Sixth Circuit has explained: "Conditions-of-confinement cases are highly fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount[.]" *LaPine v. Savoie*, No. 16-1893, 2017 WL 6764085, at *5 (6th Cir. Aug. 11, 2017) (three hours in a soiled jumpsuit "was a temporary hardship that did not rise to the level of a constitutional violation") (internal citations omitted). Plumbing problems are not unexpected, whether in jail or otherwise. Phillips offers no fact allegations suggesting his situation rose to the magnitude of a constitutional violation. As for the subjective prong, Phillips's water claim is similarly deficient. He does not contend that any named Defendant maliciously turned off the water or intentionally delayed the plumbing repair in order to injure him.

In short, Phillips's displeasure with what he concedes was a temporary plumbing inconvenience is not the type of "extreme deprivation" that violates the Constitution. He thus fails to state an Eighth Amendment conditions of confinement claim.

11

*Claim of Verbal Harassment*:  Phillips alleges Counselor Harris verbally "attacked" or verbally "assaulted" him (ECF No. 1 at PageID 4, 7), calling him names and threatening to get him "beat up" and to house him with incompatible inmates.  (*Id.* at PageID 21.)  It is well settled that verbal abuse or harassment at the hands of prison officials (or other prisoners) does not constitute a violation of the Eighth Amendment.  *See, e.g., Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that even harassment that constitutes "shameful and utterly unprofessional behavior" is insufficient to constitute cruel and unusual punishment); *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) ("Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment."); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (holding that an officer's "reprehensible" action of offering of sexual favors to the plaintiff-inmate did "not rise to the level of a constitutional violation").  Thus, Phillips's allegation of verbal harassment by Harris fails to state a claim for relief.

*Claim of Discrimination*:  Phillips contends that "favor[i]tism and [discrimination] were shown" when he was not taken for medical treatment after he told the Assistant Warden of Safety about the February 4 assault.  (ECF No. 1 at PageID 4.)  He alleges Caucasian inmates, including his cellmate, were taken to medical after being assaulted.  (*Id.* at PageID 4, 6, 7.)  Phillips also allegedly "was discriminated by color because Captain Trotter is Caucasian and he is the controlling officer" at the WCF.  (*Id.* at PageID 23.)  The Court construes this contention as alleging that Plaintiff was denied equal protection of the law.

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  It directs that all persons similarly situated should be treated alike.  It prohibits discrimination by government which burdens a fundamental right, targets a suspect class, or

intentionally treats one differently than others similarly situated without any rational basis for the difference. *See, e.g., City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985); *EJS Properties, LLC v. City of Toledo,* 698, F.3d 845, 864 (6th Cir. 2012). But "to establish an equal protection violation, a plaintiff must establish more than differential treatment alone — a discriminatory intent or purpose is required." *Maye v. Klee*, 915 F.3d 1076, 1085 (6th Cir. 2019) (citing *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977)). To prevail under an equal protection challenge, the claimant "must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Deleon v. Kalamazoo Cnty. Rd. Comm'n,* 739 F.3d 914, 918 (6th Cir. 2014). A plaintiff must show that defendants intentionally treated him differently than similarly situated individuals, targeted a suspect class, or burdened a fundamental right. *Schellenberg v. Twp. of Bingham,* 436 F. App'x 587, 591 (6th Cir. 2011). Such allegations must be supported by facts. Merely alleging that an individual's actions were "racially based [and] supported by animosity towards [the] plaintiff" who belongs to a different race does not suffice. *Nali v. Ekman,* 355 F. App'x 909, 912-13 (6th Cir. 2009) (first alteration in original).

Applying these principles, Phillips's equal protection contention is insufficiently alleged. Though his references to Caucasian inmates and to Defendant Trotter being Caucasian suggests Phillips is non-Caucasian, he does not actually allege his race and so does not allege he is a member of a suspect class. Moreover, he has not offered facts demonstrating that Defendants were motivated to treat him differently on the basis of race. *See Nali,* 355 F. App'x at 913 ("The fact that 'defendants are Caucasian' and that [plaintiff] 'is non-Caucasian' does not by itself show that defendants were motivated to discriminate against him on the basis of his race or ethnicity.").

In addition, Phillips does not sufficiently allege he was treated differently than similarly-situated Caucasian inmates.  He alleges only that Caucasian inmates who were assaulted were given medical treatment whereas he was not.  He does not state whether the injuries sustained by the referenced Caucasian inmates were similar in extent and nature to those he sustained or whether those inmates' injuries occurred under similar circumstances.  Thus he has not alleged that any Caucasian inmate actually was similarly-situated.

Phillips fails to state an equal protection challenge under the Fourteenth Amendment.

*Claim of Inadequate Grievance Procedure*:  Phillips alleges he grieved both Defendant Harris's behavior and the events surrounding the assault but states the grievances were improperly processed and that the grievance concerning the assault was "mysteriously" lost.  (ECF No. 1 at PageID 5-8.)  Thus it appears he intends to assert a claim that the grievance procedure at the WCF is inadequate.  Prisoners do not possess a constitutional right to a prison grievance procedure.  *See Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002); *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (holding that plaintiff's allegation that jail staff ignored the grievances he filed did not state a § 1983 claim "because there is no inherent constitutional right to an effective prison grievance procedure").

For all of the foregoing reasons, Phillips's complaint fails to state a claim on which relief may be  granted and is subject to dismissal.

*Opportunity to Amend Complaint*:     The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be

afforded."). Leave to amend is not required where a deficiency cannot be cured. *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court finds Phillips should be given the opportunity to amend his complaint.

_Conclusion_: In conclusion, the Court DISMISSES Phillips's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A (b)(1). Leave to amend, however, is GRANTED.

Any amended complaint must be filed within twenty-one days after the date of this order, **on or before April 21, 2021**. Phillips is advised that an amended complaint will replace the original complaint and must be complete in itself without reference to the prior pleading. The amended complaint must be signed, and the text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document. All claims alleged in an amended complaint must arise from the facts alleged in the original complaint. Each claim for relief must be stated in a separate count and must identify each Defendant sued in that count. If Phillips fails to file an amended complaint within the time specified, the Court will dismiss the case with prejudice in its entirety, assess a strike pursuant to 28 U.S.C. § 1915(g), and enter judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE